COMMONWEALTH *vs.* JOHNNY OWENS.

Norfolk. November 4, 1992. - March 12, 1993.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Arrest. Search and Seizure,* Threshold police inquiry, Protective frisk, Automobile, Probable cause. *Constitutional Law,* Search and seizure, Confrontation of witnesses. *Practice, Criminal,* Presence of defendant, Examination of jurors, Instructions to jury, Duplicative convictions. *Error,* Harmless. *Controlled Substances. Witness,* Credibility.

Where a police officer of the city of Quincy initiated pursuit of an automobile in that city, having probable cause to believe (absent any indication otherwise) that the driver was also the owner, who was the subject of an outstanding arrest warrant for serious felony charges, the officer had lawful extraterritorial authority to stop the vehicle for a threshold inquiry after continuing the pursuit into Boston. [598-600]

A police officer's protective pat-down search of a motorist did not exceed constitutionally permissible scope, and, upon discovery of an illegally possessed firearm, together with ammunition that did not match the weapon, it was permissible for the officer to search the vehicle for other weapons. [600-601]

Although the defendant at a criminal trial was constitutionally entitled to be present at the examination of prospective jurors, in the circumstances the judge's error in excluding the defendant, over his objection, from a voir dire held at sidebar, was harmless beyond a reasonable doubt. [601-606]

At the trial of an indictment for trafficking in heroin, the judge correctly instructed the jury on the issue of constructive possession of contraband discovered in the trunk of the automobile the defendant had been operating when he was stopped by police. [606-608]

The judge at a criminal trial correctly instructed the jury on common factors for their consideration in assessing testimonial evidence, and did not focus on the defendant's testimony or interest in the case. [608]

A duplicative criminal conviction, which had been placed on file with the defendant's consent, was vacated and the indictment ordered dismissed. [608]

INDICTMENTS found and returned in the Superior Court Department on October 24, 1990.

A motion to dismiss and a motion to suppress evidence were heard by *Barbara A. Dortch*, J., and the cases were tried before *Andrew G. Meyer*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph J. Balliro* for the defendant.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court the defendant, Johnny Owens, was found guilty of trafficking in heroin, unlawful carrying of several firearms, and possession of firearms without a firearm identification card.[1] Indictments charging the defendant with possession with intent to distribute heroin, possession with intent to distribute marihuana, possession of procaine, possession of ammunition without a firearm identification card, and possession of a defaced firearm were placed on file with the defendant's consent. On appeal, the defendant contends that the trial judge erred in several respects, including: (1) denying his motions to dismiss the indictments and to suppress evidence because the arresting officers were outside their jurisdictional territory; (2) denying his request to be present at the voir dire of prospective jurors, thereby violating his constitutional rights; (3) giving erroneous instructions on constructive possession which misled the jury in assessing whether the defendant had constructive possession of the contraband discovered in the trunk of the automobile that he had been operating; (4) improperly instructing the jury that a witness's interest in the outcome of the case could influence his credibility; and (5) permitting convictions of both possession with intent to distribute heroin and trafficking in heroin because possession

---

[1]The defendant was sentenced on the trafficking in heroin charge to a term of from five years to five years and one day at the Massachusetts Correctional Institution, Cedar Junction. On the firearms convictions, he was sentenced to a term of from two and one half years to three years, to be served concurrently.

with intent to distribute is a lesser included offense. We transferred the case to this court on our own motion.

We summarize the findings of fact leading to the arrest as found by the judge who ruled on the motions to dismiss and to suppress. On August 23, 1990, at approximately 9 A.M., Detective William Lanergan of the Quincy police department noted a white Lincoln automobile and a gray Cadillac automobile parked closely together in a parking lot of the Ritz Motel in Quincy. This area is often checked by police because it is a high-crime area, especially for the abandonment of stolen automobiles. Detective Lanergan performed a routine stolen vehicle check and warrant search on the Cadillac. While so doing, he noticed two males leave the motel and walk toward the Lincoln. He described the men as between twenty-five and thirty years old, six feet tall, and approximately 170-180 pounds. The men made a "couple" of trips between the motel and the Lincoln. The automobiles were parked so closely together that one of the males had to climb through an open window to enter the Lincoln. Later, the detective saw the defendant and a young woman enter the Cadillac.

Pursuant to his request for a check of the Cadillac, Detective Lanergan received information that the automobile was not stolen, but the vehicle owner was the subject of an outstanding warrant for serious felony charges. As the detective drove closer to the two vehicles, they moved from the parking lot into traffic. Detective Lanergan attempted to determine the number of the Lincoln's registration plate and followed the automobile from Quincy to Boston. The Cadillac was travelling behind the detective at this point. The detective radioed a request to have the Cadillac stopped at a specific traffic light. Prior to reaching the light, however, the driver of the Cadillac stopped at a gasoline station located in Boston just across the Quincy-Boston boundary line.

Detective Lanergan approached the Cadillac and identified himself. For his own protection, he conducted a pat-down search of the defendant's outer clothing. He felt a bulge in the area of the defendant's waist. The defendant stated that

he had a gun. The detective reached in and removed a .32 caliber revolver. In his pocket, the defendant had a magazine containing ammunition which did not fit the revolver.

Since the ammunition did not fit the revolver, the detective believed that there could be other guns located in the trunk of the vehicle. Detective Lanergan opened the trunk, saw a shotgun, and immediately closed the trunk without conducting a search. He advised the defendant of his Miranda rights and placed him under arrest. The defendant was transported to the Quincy police station for processing. The Cadillac was towed to the station where an inventory search of the vehicle took place. This search resulted in the seizure of more guns, ammunition, and drugs.

Subsequently, Detective Lanergan learned that the owner of the vehicle was the defendant's son. There apparently were no outstanding warrants on the defendant. At the time the detective stopped the defendant he had neither a physical description of the owner nor his date of birth.

1. *Motions to dismiss and to suppress.* At the hearing on the motions to suppress evidence and to dismiss the indictments, testimony was provided by Detective Lanergan. After the hearing, the judge denied the defendant's motions on three grounds: (a) the police had made a lawful investigative inquiry based on the information before them which justified the arrest; (b) the arrest was valid and proper as the result of fresh and continued pursuit; and (c) the arrest was justified as a citizen's arrest because the detective had reasonable cause to believe that the defendant had committed a felony. The defendant challenges the judge's ruling arguing that the Quincy police did not have lawful extraterritorial authority to stop or to arrest the defendant nor did Detective Lanergan have probable cause to justify fresh and continued pursuit or a citizen's arrest.

Case law consistently uses a two-prong standard when analyzing whether a stop and arrest is lawful. The first prong examines whether the initiation of the investigation was permissible in the circumstances, and then, the second prong examines whether the scope of the search was justified by the

circumstances. *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Police officers have a right to "stop a vehicle in order to conduct a threshold inquiry if [they have] a reasonable suspicion that the occupants have committed, are committing, or are about to commit, a crime. [This] suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. A hunch will not suffice." *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990), quoting *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968); *Commonwealth* v. *Silva*, *supra* at 405-406. Objectively viewing the evidence, Detective Lanergan had probable cause to believe, absent any indication otherwise, that the driver of the automobile was also the owner, who was wanted for serious felony charges. This provided the detective with reasonable cause to stop the defendant to conduct a threshold investigation. *Commonwealth* v. *Ortiz*, 376 Mass. 349, 354 (1978).

The defendant argues that, even if the investigative inquiry was justified, the detective was beyond his jurisdictional authority and powerless to stop and arrest the defendant absent an arrest warrant. While a police officer's powers to execute an arrest warrant are State-wide, *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991), citing *Commonwealth* v. *Martin*, 98 Mass. 4 (1867), the power to arrest without a warrant is limited to the officer's governmental unit unless he is in fresh and continued pursuit. See *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986); G. L. c. 41, § 98A (1990 ed.). See also *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 72-73 (1990); *Commonwealth* v. *O'Hara*, 30 Mass. App. Ct. 608, 610 (1991). General Laws c. 41, § 98A, provides that: "A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant." Detective Lanergan was within his jurisdiction when he received the information regarding the outstanding warrant. He therefore had reason to believe that

the suspect had committed an arrestable offense when he began his pursuit. See *Commonwealth* v. *LeBlanc, supra* at 73. The fact that the officer may have subjectively intended only to make an investigative stop is immaterial as long as probable cause to arrest existed. *Commonwealth* v. *Gullick*, 386 Mass. 278, 284 (1982). The fresh pursuit statute provided a legal basis for the stop of the defendant, and it is therefore unnecessary for us to reach the question whether the arrest of the defendant was valid as a citizen's arrest. See *Commonwealth* v. *Gullick, supra* at 282, citing *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165 (1981).

Turning to an examination of the scope of the search, we find that it was within constitutional limits. If a reasonably prudent police officer believes his safety or the public's safety is in danger, regardless of probable cause to arrest, he is warranted in conducting a search to discover weapons or other hidden instruments that could be used for assault. See *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990); *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977); *Commonwealth* v. *Silva, supra* at 408; *Commonwealth* v. *Matthews*, 355 Mass. 378, 381 (1969). Detective Lanergan had sufficient reason to believe he could be confronting a dangerous felon based on the reported outstanding warrant for serious felony charges for the owner of the Cadillac. As a precaution, he would be warranted, when faced with a suspected potentially armed and dangerous felon to conduct a limited pat-down search to ensure his safety. Once Detective Lanergan discovered the illegally possessed revolver, he had probable cause to arrest the defendant, *Commonwealth* v. *Ballou*, 350 Mass. 751, 756 (1966), cert. denied, 385 U.S. 1031 (1967), and privilege to search further. *Commonwealth* v. *Silva, supra* at 408. After seizing the revolver, the detective discovered that the defendant possessed ammunition that did not match the revolver, creating a suspicion that the defendant possessed other weapons. Discovery of an illegally possessed firearm and ammunition, which did not match the weapon, gave the detective cause to search the vehicle for other concealed objects. *Commonwealth* v. *Jimenez*, 22

Mass. App. Ct. 286, 290-291 (1986), citing *United States* v. *Ross*, 456 U.S. 798, 825 (1982).

2. *Exclusion of the defendant from voir dire of prospective jurors.* The defendant contends that the judge violated his constitutional rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights when he denied the defendant's request to be present at sidebar voir dire of individual prospective jurors, thereby mandating the reversal of his convictions. During the empanelment process the judge initially addressed the entire venire in accordance with G. L. c. 234, § 28 (1990 ed.), in open court, describing the nature of the case and querying whether any of the prospective jurors knew or was related to anyone involved in the case, or had formed any opinions, bias, or prejudice about the case. The judge then explained the rules of law pertaining to the presumption of innocence, and the burden on the Commonwealth to prove guilt beyond a reasonable doubt. He further informed the panel that the defendant was not required to take the stand or to present any evidence on his own behalf. Then the judge conducted individual voir dire at sidebar. The individual voir dire inquired whether: the race of the defendant, who is black, would affect the juror's deliberation; testimony by a police officer would be more credible than that of another witness; the fact that the case involved drugs and guns would make it difficult for them to render an impartial verdict; and if given a choice, the juror would prefer not to serve on the case. After the sidebar voir dire commenced, the judge denied defense counsel's request for the defendant to be present at sidebar stating that the defendant was represented by competent counsel and his presence could intimidate the jurors.[2] During the seating of the first fourteen jurors, six were excused for cause without objection based on their response to the questions. Defense counsel conferred with the defendant prior to the exercise of any peremptory

---

[2]DEFENSE COUNSEL: "May I just make a suggestion? I think because we're doing this at side bar and there are people in the courtroom, I think

challenges. Then the prosecutor struck three of the initial fourteen. The following voir dire to select replacements excused four more for cause without objection. After the prosecutor declared satisfaction, defense counsel exercised four of his peremptory challenges. After the jurors were replaced, defense counsel conferred again with the defendant subsequently declaring his satisfaction. The prosecutor challenged one of the newly seated jurors. Neither side struck the chosen substitute and the case proceeded.

It is clear that a defendant is entitled to be present at all critical stages of a criminal proceeding from arraignment to sentence. See *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 543 (1988). See also Mass. R. Crim. P. 18 (a), 378 Mass. 887 (1979) (defendant "entitled to be present at all critical stages of the proceedings"). Article 12 states: "And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election." The defendant's personal presence is essential at trial which "commences at least from the time when the work of empanelling the jury begins." *Hopt* v. *Utah*, 110 U.S. 574, 578 (1884). A defendant has a right to be present when jurors are being examined in order to aid his counsel in the selection of jurors and in the exercise of his peremptory challenges. *Lewis* v. *United States*, 146 U.S. 370, 373 (1892). It is "improper to deny to a defendant the privilege of being present at a voir dire, if an appropriate request for his presence is made." *Amado* v. *Commonwealth*, 349 Mass. 716, 721 (1965) (voir dire of witness on the subject of voluntariness of defendant's statements in police station). While the Commonwealth acknowledges that exclusion of

---

the defendant ought to be up here to hear the answers."

PROSECUTOR: "I'd object. We've never had a defendant during an individual voir dire."

THE JUDGE: "We have very competent counsel representing the defendant. I think it unnecessarily complicates things. I also think it intimidates the jurors, and I don't want to do that. For that reason, I'm going to decline the request, but I'll note your objection."

the defendant from the voir dire was error, it argues that reversal of the convictions is not automatic.[3]

Exclusion of the defendant from communications between the judge and the jury may not mandate a new trial if it is shown that the error is "harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U.S. 18, 24 (1967) (constitutional error does not automatically require reversal of conviction, instead harmless error analysis is applied). See *Arizona* v. *Fulminante*, 111 S. Ct. 1246, 1263 (1991) (most constitutional errors can be harmless beyond a reasonable doubt); *Lufkins* v. *Leapley*, 965 F.2d 1477, 1480 (8th Cir. 1989) (constitutional errors during course of trial assessed with other evidence to determine whether the trial error was harmless beyond a reasonable doubt); *Rushen* v. *Spain*, 464 U.S. 114, 118-120 (1983) (ex parte communication between judge and jury does not constitutionally require reversal of conviction if error harmless); *United States* v. *Alessandrello*, 637 F.2d 131, 143-144 (1980), cert. denied, 451 U.S. 949 (1981) (absence of defendant from voir dire not subject to per se rule of automatic reversal, totality of circumstances must be examined to determine whether error harmless); *United States* v. *Washington*, 705 F.2d 489, 497-498 (D.C. Cir. 1983) (when defendant's request to be present denied, assess whether error harmless beyond reasonable doubt to exclude defendant after request from voir dire at which counsel participated); *Young* v. *United States*, 478 A.2d 287, 290 (D.C. 1984) (to prevent reversal of conviction, must show exclusion of defendant from voir dire harmless error beyond a reasonable doubt); *State* v. *Payne*, 328 N.C. 377, 388 (1991) (violation of defendant's constitutional right to be present

---

[3]The defendant argues that his right to be present is constitutionally based on the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights and that the right is so fundamental that it should not be subjected to harmless error analysis. He does not argue, however, that, because art. 12 affords greater protection in these circumstances than that afforded by the Sixth and Fourteenth Amendments, harmless error analysis is foreclosed. That question is therefore not before us and we do not decide it.

subject to harmless error analysis); *Wesley* v. *State*, 749 S.W.2d 933, 934-935 (Tex. Ct. App. 1988) (defendant failed to show that his absence from portion of voir dire, at which counsel participated, resulted in any prejudicial injury). Cf. *Robinson* v. *United States*, 448 A.2d 853, 855-856 (D.C. 1982) (on request, defendant should be allowed to participate in voir dire, but reversal not per se required). See also Annot., 33 A.L.R.4th 429, §§ 2, 6, and 7 (1984 & Supp. 1992).

Our decisions have utilized a similar approach in deciding whether constitutional violations require reversal. See *Commonwealth* v. *Martino*, 412 Mass. 267, 286 (1992) (defendant's absence from communications between judge and jury does not constitute per se reversible error); *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. 410, 415 (1988) (defendant's absence from communication between judge and jury about administrative matters did not pose a risk of miscarriage of justice); *Commonwealth* v. *Hicks*, 22 Mass. App. Ct. 139, 147 (1986) (judge's interrogation of jurors in defendant's absence regarding newspaper article harmless error).

We have also ruled that the defendant's presence is not required at pretrial motions for changes of venue or continuances. *Commonwealth* v. *Millen*, 289 Mass. 441, 454 (1935). Nor is the defendant's presence required at a hearing on a motion for a new trial, *Commonwealth* v. *Costello*, 121 Mass. 371, 372 (1876), at a proceeding conducted between the verdict and sentence, *Commonwealth* v. *Cody*, 165 Mass. 133, 138-139 (1896), or at a jury view, see *Snyder* v. *Massachusetts*, 291 U.S. 97, 114 (1934); *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 31 (1923).

This court and the Appeals Court have ruled that exclusion of the defendant from voir dire, over his objection, is reversible error when the communications concern juror misconduct, *Commonwealth* v. *Robichaud*, 358 Mass. 300, 303 (1970), or a deliberating juror is discharged due to illness, *Commonwealth* v. *Perez*, 30 Mass. App. Ct. 934, 935-936 (1991), or when the record fails to establish that a juror's discharge was for good cause, *Commonwealth* v. *Connor*, 392 Mass. 838, 842-847 (1984). If, however, there is no objection

on the record to the defendant's exclusion, then the court considers the issue waived and will not address it on appeal. *Commonwealth* v. *Martino, supra* at 287. *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 400 (1975). *Commonwealth* v. *Hicks, supra* at 146-147.

Here, defense counsel conferred with the defendant on at least two occasions during the voir dire and before the exercise of peremptory challenges. The defendant through his counsel failed to exercise all of his peremptory challenges and expressed satisfaction with the jury selected. There is no claim of bias, prejudice, or improper influence on any of the jurors seated.

As the judge found, the defendant was well represented by adequate counsel who participated fully during the voir dire and conferred with the defendant during the proceedings. The defendant offers no suggestion as to how he was prejudiced by the procedure, except for his diminished capacity to observe jurors. No presumptive prejudice arises from the defendant's difficulty in observing the jurors during voir dire, since "the deprivation of an opportunity for observing a prospective juror's demeanor lacks legal significance." *Commonwealth* v. *Campbell*, 378 Mass. 680, 696 (1979). See *Commonwealth* v. *Tracy*, 27 Mass. App. Ct. 455, 465 (1989) (deprivation of opportunity to observe prospective juror's demeanor legally insignificant; defendant still retained unused peremptory challenges); *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 387-389 (1985) (defendant failed to show injury from empanelling process and retained peremptory challenges). Cf. *Commonwealth* v. *Brown*, 395 Mass. 604, 605-606 (1985) (error to require defendant to exercise peremptory challenges before full jury panel obtained); *Commonwealth* v. *Susi*, 394 Mass. 784, 789 (1985) (prejudicial diminution of peremptory challenges constitutes reversible error); *Commonwealth* v. *Wood*, 389 Mass. 552, 564 (1983) (erroneous denial of proper peremptory challenge reversible error). Whatever benefit the defendant would gain from being within hearing range of the jurors' responses during the voir dire was available to him through the presence of his counsel,

who conferred with him during the examinations and prior to the exercise of peremptory challenges. *Amado* v. *Commonwealth, supra* at 721 (benefit of cross-examination available to the defendant through counsel's presence during voir dire). When a defendant is excluded from a trial proceeding, the exclusion should be considered in relation to the whole record. See *United States* v. *Gagnon*, 470 U.S. 522, 526-527 (1985); *Snyder* v. *Massachusetts, supra* at 115. To require a new trial in these circumstances, therefore, would mean that a per se rule of prejudice exists in any instance of impairment of the defendant's right to be present during voir dire. This we are not inclined to do. Instead, we follow those jurisdictions that apply the harmless error analysis. See *United States* v. *Washington, supra* (despite impairment of defendant's ability for direct observation and hearing of voir dire examinations, no showing that it altered ability to exercise peremptory challenges or outcome of trial); *United States* v. *Alessandrello, supra* (no showing that exclusion of defendant from voir dire affected outcome of trial); *Young* v. *United States, supra* at 291 (no evidence provided that defendant's presence at bench voir dire would have altered conviction); *State* v. *Payne, supra* at 388 (no showing that defendant's presence at voir dire would have resulted in different outcome). We conclude that the error was harmless beyond a reasonable doubt.

3. *Constructive possession instructions.* The defendant maintains that the instructions on constructive possession were insufficient because they failed to convey the concepts of knowledge, ability, and intent to control the illegal drugs found in the automobile's trunk. We set out the judge's charge pertaining to the possession of controlled substances in the margin.[4]

---

[4]The judge instructed the jury in pertinent part: "So first of all, you have to find out is there a controlled substance, secondly, did the defendant possess it and did the defendant do so knowingly or intentionally. By knowingly or intentionally, I mean not accidentally, did the defendant possess a drug consciously, voluntarily, and purposely and not because of ig-

When assessing whether jury instructions are sufficient, "we consider the charge in its entirety, to determine the 'probable impact, appraised realistically . . . upon the jury's factfinding function.' " *Commonwealth* v. *Batchelder*, 407 Mass. 752, 759 (1990), quoting *Commonwealth* v. *Richards* 384 Mass. 396, 399-400 (1981). Jury instructions must be construed as a whole to prevent isolated misstatements or omissions from constituting reversible error. See *Commonwealth* v. *Campbell*, 378 Mass. 680, 706 (1979). A judge is not required to give jury instructions in the exact manner requested by the defendant provided that the requested instruction is adequately covered. See *Commonwealth* v. *Lowe*, 391 Mass. 97, 109 (1984); *Commonwealth* v. *Jones*, 375 Mass. 345, 359 (1978).

The judge correctly instructed that the jury must consider whether the defendant possessed the drugs consciously, voluntarily, and purposely. There is no significant difference between the words "purposely" and "intentionally." Thus the jury were instructed that the Commonwealth's burden was to prove both knowledge and specific intent regarding the drugs.

Constructive possession of a controlled substance requires proof that the defendant had knowledge of the location of the illegal drugs plus the ability and intent to exert dominion and control. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991); *Commonwealth* v. *Pratt*, 407 Mass. 647, 651 (1990); *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974); *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437 (1991); *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991); *Commonwealth* v.

---

norance, mistake or accident, and did he possess it with intent to distribute it, sell it or give it to others.

"When we're talking about knowledge and when we're talking about intent, you may well ask yourself how do you prove that. You can't go inside somebody's mind. So the best we can do to prove knowledge or to prove intent is to look at all the circumstances at a particular time and then make reasonable inference from those circumstances that the party did or did not knowingly, did or did not intentionally possess it, did or did not possess a drug with intent to sell or distribute it to others."

*Nichols,* 4 Mass. App. Ct. 606, 613-614 (1976). The instruction adequately informed the jury of those requirements.

4. *Jury instruction assessing witness credibility.* Although the defendant asserts to the contrary, the judge's instruction did not focus on the defendant's testimony or interest in the case. Instead, the judge's instructions were general regarding common factors the jury could consider in assessing the testimonial evidence including the demeanor, frankness, intelligence, memory, motive, and objectivity of the witnesses. We find no error in the instruction. See *Commonwealth* v. *Roderick,* 411 Mass. 817, 821 (1992); *Commonwealth* v. *Ramos,* 31 Mass. App. Ct. 362, 368-369 (1991).

5. *Duplicative conviction.* The defendant was convicted of both possession with intent to distribute heroin and trafficking in heroin. As the parties agree, possession with intent to distribute is a lesser included offense of the trafficking offense and the defendant cannot be sentenced on both. See *Commonwealth* v. *Chappee,* 397 Mass. 508, 523 (1986); *Morey* v. *Commonwealth,* 108 Mass. 433, 434-435 (1871). We affirm the trafficking conviction. The possession with intent to distribute heroin conviction, which was placed on file, is vacated, and the indictment is dismissed. The judgments of conviction on the indictments before the court are affirmed.

*So ordered.*