COMMONWEALTH *vs.* JOSE MERCADO.

Suffolk. March 4, 1996. - April 1, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry.

A police officer investigating a report of a shooting, who received information from a police radio report and a bystander that narrowed the range of suspects to two men in a store whose appearance matched a general description and who observed the men's evasive behavior when they saw the police officer approaching, was warranted in conducting a threshold inquiry of the two men [369-371]; further, in the circumstances, the officer was warranted in patting down the men's outer clothing to determine whether they were armed [371-372]: the handgun the officer found in the waistband of the shorts worn by one of the men should not have been suppressed [372].

INDICTMENTS found and returned in the Superior Court Department on December 6, 1994.

A motion to suppress evidence was heard by *Herbert F. Travers, Jr., J.*

An application for leave to prosecute an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Christopher Hodgens,* Assistant District Attorney, for the Commonwealth.

*Edward K. Boyer* for the defendant.

ABRAMS, J. The defendant, Jose Mercado, stands indicted for murder in the first degree, breaking and entering a building with intent to commit a felony, and illegal possession of a firearm. After a hearing, a Superior Court judge allowed Mercado's motion to suppress evidence seized from him following a police officer's stop and frisk. The judge determined that the stop was not justified by reasonable suspicion. Pursuant to Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979), the

Commonwealth applied to a single justice of this court for leave to appeal the allowance of the motion to suppress. The single justice allowed the application and reported the case to this court. We reverse.

The facts, as found by the judge, are as follows. On August 19, 1994, at about 4:30 P.M., a number of shots were fired on the third floor of 146 Main Street in Worcester. Officer Coakley of the Worcester police department learned of the incident by police radio. According to the radio report, the suspects in the shooting were three Hispanic males who, after the reported shooting, ran south on Main Street.

When he arrived at the scene, Coakley saw another police officer assisting a man who was bleeding profusely. The officer directed Coakley to interview a woman standing on the sidewalk fifty to seventy yards to the south. The woman told Coakley that she had heard shots fired and had seen two white males running northeastward.

After speaking to the woman, Coakley started walking northerly. When he was about twenty-five to thirty feet from the woman, Coakley encountered a man named Lemerise standing on the sidewalk with his eight or nine year old son. Lemerise told Coakley that he had observed some unusual activity in Kangaroo Crossing, a sporting attire and shoe store located in a building set back less than one hundred feet from the sidewalk on which they were standing. He told Coakley that he had observed a shirtless Hispanic or black male wearing olive green pants pushing people out of his way in an apparent attempt to reach the cash register. He had three or four fifty dollar bills in his hands and said that he wanted to buy an article. The man appeared very agitated.

Coakley looked toward the doorway of Kangaroo Crossing. The judge found that "Coakley saw a Spanish male . . . start to come outside from the small vestibule. This man was later identified as Luis Yambo. . . . Yambo stopped and backed up into the vestibule. Officer Coakley also saw another Spanish male [Mercado], three or four feet behind the first, make these same movements when he saw the officer. Thereafter, they once again stepped outside.

"[Mercado] was wearing plaid shorts with a long 'Miami Hurricane' shirt extending over the top, and a baseball cap. He stepped out first, looking back at Yambo and then ahead at the officer. Yambo hesitated, then started out, then stopped and started once again. . . .

"Officer Coakley called out to the two men, 'How you doing? What's up?', and, on reaching them, asked their names and where they were coming from. Yambo replied that they had been in the store. [Mercado] said he did not speak English (in English).

"Coakley then proceeded to pat them down. . . . He patted down Yambo first. . . . Then he patted down [Mercado]. He felt an object. He lifted the shirt and in the waist band of the shorts saw a firearm. It proved to be a semi-automatic 9 mm. [handgun]."

In reviewing a ruling on a motion to suppress, our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found. *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). In stop and frisk cases our inquiry is two-fold: "first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances." *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990), quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Accord *Commonwealth* v. *Owens*, 414 Mass. 595, 598-599 (1993).

As to the first inquiry, a police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime. *Moses, supra* at 140, quoting *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Accord *Commonwealth* v. *Helme*, 399 Mass. 298, 301 (1987); *Silva, supra* at 405. To qualify as "reasonable," the officer's suspicion "must be based on specific, articulable facts and reasonable inferences drawn therefrom." *Moses, supra*, quoting *Wren, supra*. Accord *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993); *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). The standard is objective: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968).

We conclude that the information Officer Coakley received from the police radio, together with Lemerise's statement and Coakley's own observations, justified the stop and frisk of Mercado. From the radio bulletin, and his observation of the bleeding man, Coakley knew that a shooting had recently oc-

curred. From the radio bulletin and Lemerise's statement, Coakley could have reasonably believed that there were three suspects of Hispanic descent, at least one of whom was in the Kangaroo Crossing store. These facts, coupled with Coakley's observation of the behavior of the Hispanic men whom he saw leaving the store, see *supra* at 368, sustain Coakley's reasonable suspicion of those men. In these circumstances, we think that "it would have been poor police work indeed" had Coakley failed to initiate a threshold inquiry.[1] *Terry, supra* at 23.

Mercado relies heavily on *Commonwealth* v. *Cheek,* 413 Mass. 492 (1992). We think that case distinguishable. In *Cheek,* two police officers received a police radio bulletin that a stabbing had taken place and that "[f]or a suspect we have a black male with a black $3/4$ length goose known as Angelo of the Humboldt group." *Id.* at 493. Some time later, approximately one-half mile from the scene of the stabbing, the officers saw a black male (the defendant) wearing a dark-colored three-quarter length goose-down coat. The officers approached the defendant and asked his name, but his response was unclear because his coat was zippered up over his mouth. The officers proceeded to frisk the defendant and discovered a .38 caliber handgun in his coat pocket. *Id.*

We rejected the Commonwealth's contention that reasonable suspicion arose from the match of the coat to the radio description coupled with the defendant's presence in the high crime area where the stabbing allegedly occurred. We observed that the description of the suspect as a "black male with a black $3/4$ length goose" could have fit a large number of men living in the area where the stop occurred. *Id.* at 496. We also observed that neither his proximity to the crime scene nor his presence in a high crime area "contribut[ed] . . . to the officers' ability to distinguish the defendant from any other black male" in the neighborhood. *Id.* In particular, we noted that the police had not observed the defendant engaged in any suspicious activities. *Id.*

---

[1]The motion judge noted in his ruling that "Officer Coakley had inconsistent information from different sources." While it is appropriate for the judge to consider the existence of inconsistent information, inconsistencies alone do not foreclose the possibility of reasonable suspicion. The question is whether the officer knew sufficient articulable facts to form a reasonable suspicion of particular individuals.

In this case, unlike *Cheek*, the information in Coakley's possession allowed him to distinguish Mercado and his companion from other persons in the vicinity. The radio report narrowed the range of possible suspects to males of Hispanic descent who were in the vicinity south of 146 Main Street. Lemerise's statement further narrowed the range of suspects to males of Hispanic descent then present in the Kangaroo Crossing store. That information, coupled with the behavior of Mercado and his companion on seeing a police officer as they left the store, was sufficient for Coakley to form a reasonable suspicion of those two particular men.

Neither evasive behavior, proximity to a crime scene, nor matching a general description is alone sufficient to support the reasonable suspicion necessary to justify a stop and frisk. See *Cheek, supra* at 492 (general description and proximity insufficient to warrant stop); *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981) (quick maneuver to avoid contact with police insufficient); *Commonwealth* v. *Bacon*, 381 Mass. 642, 646 (1980) (driver's attempt to conceal his face insufficient). Each of these factors may, however, be considered by the police, and in combination may allow the police to narrow the range of suspects to particular individuals. See *Moses, supra* at 140 (some suspects fleeing the scene while another suspect ducked under car dashboard on police officer's approach justified threshold inquiry); *Commonwealth* v. *Sanchez*, 403 Mass. 640, 645 (1988) (suspect's flight after consenting to search justified threshold inquiry); *Wren, supra* at 708 n.2 ("[a]n attempt to avoid contact with or observation by the police, while not enough itself to justify suspicion, may be considered along with other facts"); *United States* v. *Viegas*, 639 F.2d 42, 44, 45 (1st Cir.), cert. denied, 451 U.S. 970 (1981) (suspect's arrival from known drug distribution center, coupled with evasive actions in airport, warranted reasonable suspicion). In such cases, an investigatory stop of such individuals is constitutional. This is such a case.

We now turn to the second inquiry arising from a "stop and frisk" search: whether the scope of the search was within constitutional limits. See *Owens, supra* at 600; *Silva, supra* at 405. Those limits are exceeded unless the search is " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Silva, supra* at 407, quoting *Terry, supra* at 19. "The degree of intrusiveness that is permitted is

that which is 'proportional to the degree of suspicion that prompted the intrusion.' " *Moses, supra* at 141, quoting *Commonwealth* v. *Borges,* 395 Mass. 788, 794 (1985). Because Coakley reasonably suspected Mercado of having recently committed a violent crime, a pat-down of Mercado's outer clothing to determine whether he was armed was justified by the need to protect police officers and bystanders. See *Adams* v. *Williams,* 407 U.S. 143, 147-148 (1972); *Terry, supra* at 28-29; *Owens, supra* at 600.

Applying constitutional principles to the instant case, we conclude that the evidence should not have been suppressed. "We believe the circumstances justified the officer's actions." *Commonwealth* v. *Summerlin,* 393 Mass. 127, 129 (1984), cert. denied, 469 U.S. 1193 (1985).

The order allowing the motion to suppress is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*