Following a jury trial in the Superior Court, the defendant was convicted of violating G. L. c. 118E, § 41, the Commonwealth's Medicaid antikickback statute. On appeal, he claims that the Commonwealth presented insufficient evidence to support a conviction, and that the jury instructions were based on inapplicable Federal law. We affirm.
Background. From the evidence presented at trial, the jury could have found as follows. The defendant was the owner of Gianna's House, a residential treatment facility that provided sober living and support to men and women recovering from substance abuse. Residents of Gianna's House were required to undergo regular urine tests for drugs and alcohol to remain at the facility.
In 2009, the defendant began using Preventative Medicine Associates (PMA) to conduct urine testing for Gianna's House residents. PMA also provided primary health care to Gianna's House residents. PMA was a MassHealth provider, and therefore was authorized to service patients who had health insurance through MassHealth, the Massachusetts Medicaid program. Most residents of Gianna's House had MassHealth insurance.[2] PMA was owned and directed by Dr. Punyamurtula Kishore, who had exclusive authority for making financial arrangements at PMA.
PMA initially paid the defendant $ 300 per week purportedly for driving Gianna's House residents to PMA's Norton office for testing or medical care.[3] According to various witnesses, the defendant desired additional compensation from PMA in exchange for allowing PMA to conduct urine testing of residents of Gianna's House. The defendant also told PMA employees that he "felt that he should be compensated beyond the reimbursement arrangement," and that he intended to find another lab to conduct urine testing for Gianna's House residents if PMA did not provide further compensation.
The defendant subsequently met with Kishore. After this meeting, the defendant became PMA's director of business services, and between August 2009 and January 2011, he received $ 1,057.70 per week from PMA.[4] Between 2009 and 2011, the defendant received more than $ 64,000 from PMA,[5] and Gianna's House received $ 4,800. In the summer of 2009, Amy Walsh, another employee at Gianna's House, also began to receive checks for $ 480 per week issued by PMA or National Library of Addictions.[6]
In March 2010, an investigator from the Attorney General's Medicaid fraud control unit interviewed the defendant. Asked "[s]everal" times if he was presently or had ever been on the PMA payroll, the defendant responded "no" each time.
Discussion. The defendant contends that the Commonwealth presented insufficient evidence to support a conviction under G. L. c. 118E, § 41, because "[t]here is no crime for improper referral in Massachusetts." The argument is unavailing.
We review the defendant's claim to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). A conviction under § 41 requires proof that the defendant (1) "receive[d] any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly," (2) "in return for purchasing, leasing, ordering or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item," (3) "for which payment may be made in whole or in part under this chapter." G. L. c. 118E, § 41. Here, there is no serious dispute that the Commonwealth had proven the first and third elements. Rather, the defendant argues that the second element was not met because the Massachusetts statute, unlike the corresponding Federal statute, does not prohibit remuneration for referrals. We disagree.
The plain language of § 41 proscribes "ordering or arranging for or recommending [the] purchasing, leasing, or ordering [of] any good, facility, service, or item." See Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000) ("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning and the courts need not look beyond the words of the statute itself"). From the facts adduced at trial, a rational jury could have found that the defendant received remuneration (payment from PMA) in exchange for ordering,[7] arranging for, or recommending the ordering of a service (urine testing of the residents of Gianna's House).
In addition, the defendant cites to no pertinent Massachusetts authority to support his argument. His reliance on Commonwealth v. Kobrin, 72 Mass. App. Ct. 589, 592-594 (2008), is misplaced. Kobrin neither addresses nor stands for the proposition that receiving remuneration for "referrals" is not a violation of G. L. c. 118E, § 41. That the defendant in that case was found not guilty of certain counts of violating the antikickback provision under § 41 does not compel or warrant a finding in the present case that all referrals are exempt from § 41. There is nothing in Kobrin that states or in any way implies such a conclusion.
The defendant also contends that the judge's instructions were erroneous creating a substantial risk of a miscarriage of justice because they criminalized the use of referrals. Here, the judge's instructions followed the language of § 41 and obligated the jury to find each element of the offense beyond a reasonable doubt. Viewed as a whole, the instructions were clear, and we presume the jury followed them. See Commonwealth v. Owens, 414 Mass. 595, 607 (1993). Furthermore, we note that the evidence against the defendant was strong. In addition, the jury could have found that the defendant's lie to the investigator demonstrated consciousness of guilt. See Commonwealth v. Booker, 386 Mass. 466, 470-471 (1982).[8] We discern no error, much less any substantial risk of a miscarriage of justice.
Judgment affirmed.

In 2009, MassHealth reimbursed providers $ 9.58 per urine test, with a limit of thirteen tests per day. That limit was decreased to eight tests per day in October, 2010.

Prior to receiving the $ 300 per week from PMA, the defendant submitted to PMA an employment application that left several spaces blank, including "[p]osition applied for," "full-time or part-time work," "previous educational experience," and "[p]revious work experience."

In July of 2009, the defendant submitted a second employment application to PMA for the position of director of business services. A human resource manager from PMA testified that the process surrounding the defendant's hiring for that position was "extremely out of normal circumstances" insofar as "the job title was something [PMA] never would have hired for, would have had for anybody." The defendant was "hired in a way where [he] met with Dr. Kishore during a weekend and [he was] on board on Monday."

Payment to the defendant was in the form of checks issued by PMA or National Library of Addictions, a nonprofit entity associated with PMA.

Walsh did not perform any work for National Library of Addictions. Although she attempted to do some work for PMA, the defendant instructed her to "[s]top working" because she was "making [him] look bad."

We are likewise unpersuaded by the defendant's contention that because drug screenings could only be ordered by a properly certified doctor or medical practice, and the defendant was not certified as such, he technically could not have "ordered" any urine testing. Moreover, the evidence was more than sufficient for the jury to find that even if he was not authorized to "order[ ]" urine testing, he nonetheless "arrang[ed] for" or "recommend[ed]" urine testing here. G. L. c. 118E, § 41.

The defendant also claims that the judge's instruction on the legislative purpose of G. L. c. 118E, § 41, constituted reversible error. While there is a measure of persuasiveness to the contention that the better practice is to refrain from explaining the legislative purpose of a statute, we discern no error here, where the judge's instructions in this case were accurate. See Commonwealth v. Brunelle, 361 Mass. 6, 12 (1972) ("A judge may inform a jury about the legislative purpose of a statute, if [s]he does so accurately").