NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-988

COMMONWEALTH

vs.

XAVIE X.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted as a youthful offender in the Juvenile Court, the juvenile appeals from his convictions and the denial of his motion to suppress. Following a trial, a jury found him guilty of armed robbery (G. L. c. 265, § 17), assault and battery with a firearm (G. L. c. 265, § 15E [a]), carrying a firearm without a license (G. L. c. 269, § 10 [a]), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A [b]), and witness intimidation (G. L. c. 268, § 13B). On appeal, he contends that the motion judge failed to suppress evidence from an unlawful investigatory stop, and he contends that the trial judge erred regarding identification evidence and a related jury instruction. We affirm.

Background.  As more fully set forth in the discussion below, the juvenile is one of two people apprehended following a shooting that occurred in Quincy at about 1:15 P.M., on March 17, 2017.  After police officers responded to a report of shots fired around Santander Bank on Hancock Street, Trooper Michael Best, armed with a description of the suspects, found the juvenile and his companion in a nearby parking garage and engaged them in a brief conversation.  When the trooper attempted to patfrisk the juvenile, he dropped the backpack (exposing the handle of a firearm inside), jumped off the second floor of the parking garage, and fled.  Officers later apprehended him.

Discussion.  1.  Threshold inquiry.  "In reviewing a ruling on a motion to suppress, our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).  Here, the judge concluded that Trooper Best had a reasonable suspicion to conduct an investigatory stop and subsequent frisk of the juvenile.  On appeal, the juvenile takes no issue with the judge's findings of fact but contends that the evidence did not justify the stop or the frisk.  We discern no error.

We disagree with the juvenile's contention that Trooper Best's conversation in the parking garage constituted a seizure.

2

"[P]olice do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." Commonwealth v. Fraser, 410 Mass. 541, 544 (1991). See Commonwealth v. Nestor N., 67 Mass. App. Ct. 225, 228 (2006) (police conversation with juvenile did not constitute seizure). While "the age of a juvenile suspect, if known to the officer or if objectively apparent to a reasonable officer, will be part of the totality of the circumstances relevant to whether the juvenile was seized under art. 14 of the Massachusetts Declaration of Rights," Commonwealth v. Evelyn, 485 Mass. 691, 693 (2020), we discern nothing from the record to suggest that the trooper used his police power to coerce the juvenile to stay in the parking garage and speak with him. To the contrary, the record suggests that the juvenile engaged in the conversation in an effort to throw the trooper off the trail by saying the pair were coming from Quincy College.

Even if the conversation with the juvenile was sufficiently coercive to render it a seizure, something we do not conclude, Trooper Best had ample justification for conducting an investigative stop based on a reasonable suspicion that the juvenile and his companion were engaged in criminal activity. See Mercado, 422 Mass. at 369. See also Terry v. Ohio, 392 U.S.

3

1, 21 (1968). Officers responded to a report of shots being fired near the bank, and they found a bullet hole in a window and broken glass in the building next to the bank. One witness at the scene said "two or three males" ran from behind a building, and a second witness, who also saw "two or three males," provided a detailed description of one (a white male suspect wearing black clothing and carrying a backpack and a silver handgun). A third witness provided a similar description of two male suspects (one with a dark complexion and one white or Hispanic with a backpack), saw the suspect with the backpack drop an object and put it in his waistband, and noted they jogged together toward a parking garage. Responding to the descriptions and probable escape route of the suspects, Trooper Michael Best went to the parking garage and spotted two suspects clothed in black (one "black male" and one "white male" with a backpack), generally matching the physical description, emerge from a second-floor stairwell. Thus, based on the interception of possible suspects along their escape route, Trooper Best had "sufficient articulable facts" to warrant an investigative stop of these two individuals. Mercado, 422 Mass. at 370 n.1. Failure to make an inquiry on these facts "would have been poor police work indeed." Mercado, 422 Mass. at 370, quoting Terry, 392 U.S. at 23.

4

Rather than dispelling suspicions, the trooper's conversation with the suspects and his observations justified a patfrisk.  Upon questioning by the trooper, the white male suspect said that they were coming from Quincy College, but neither could produce college identification.  The white male suspect, however, did produce a debit card with the juvenile's name on it.  During the brief conversation, both suspects continually looked around, placed their hands in their pockets, and looked nervous.  When asked if they had weapons, the juvenile's companion acknowledged that he had a knife, and the juvenile did not respond.  Trooper Best became concerned for his safety and asked about the contents of the backpack, and the juvenile replied that it was not his.  After Trooper Best asked to look inside the backpack, the juvenile backed away, turned the backpack from view, and placed his hands in his pockets.  Given the nature of the crime under investigation, the inconsistent answers to questions, the acknowledgement of the companion that he was armed, the juvenile's unanswered question about being armed, the nervous demeanor, and the concealing of hands in pockets, Trooper Best had a "reasonable suspicion that the suspect [was] armed and dangerous."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 36 (2020).  Because we conclude that the trooper had the requisite reasonable suspicion, we need not

5

address the judge's alternative conclusion that the juvenile abandoned the backpack.

2. _Identification evidence_. Prior to trial, the parties filed competing motions in limine with respect to Officer Stephen Cleary making an in-court identification of the juvenile. The trial judge denied the defense motion and allowed the Commonwealth's motion. The evidence at trial showed that Officer Cleary ran up the parking garage ramp and saw the juvenile flee from Trooper Best and suddenly disappear by jumping off the second floor of the parking garage. Officer Cleary looked over the garage wall and saw the juvenile running down the street about thirty feet below. Later, Officer Cleary went to another location less than a mile away and identified the juvenile, who had been apprehended, as the person he saw disappear from the parking garage. Over an objection, Officer Cleary identified the juvenile in court as the person who was in custody.

On appeal, the juvenile contends that the judge erred by allowing Officer Cleary to identify him in court. He argues that the in-court identification was irrelevant and unduly prejudicial. He further argues that because the showup was suggestive, the in-court identification was rendered inconsistent with Commonwealth v. Crayton, 470 Mass. 228, 242 (2014) (requiring "good reason" for admitting in-court

identification without prior out-of-court nonsuggestive identification). We discern no error as we rejected a similar claim in Commonwealth v. Matos, 95 Mass. App. Ct. 343, 350 (2019), where an officer who "was not an eyewitness to the crime and had no firsthand knowledge of the perpetrator's identity" was properly allowed to testify that the juvenile was the man the police arrested. We also note that unlike the situation here, Crayton applies to a "first-time in-court identification" and does not, as the juvenile implies, prohibit out-of-court showups. Crayton, 470 Mass. at 235, 238 ("suggestiveness alone is not sufficient to render a showup identification inadmissible").

3. Identification jury instruction. Finally, we discern no error and no substantial risk of a miscarriage of justice stemming from the jury instruction on identification evidence. As the juvenile concedes, the judge's instruction "largely mirrors the model jury instruction." For the first time, however, he contends that with respect to Officer Cleary's testimony the judge erred by not including optional instructions from the model regarding (1) a photographic array or lineup and (2) multiple identification procedures.

These optional instructions would not have assisted and may have confused the jury when evaluating Officer Cleary's testimony because he did not view an array or a lineup, and he

only participated in one pretrial identification.  See Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051 (2015) (optional instructions "need only be given under the circumstances described").  With respect to the evidence presented, we also note the judge cautioned that a showup may be particularly suggestive, that witnesses may be truthful but mistaken, that witnesses may have greater difficulty identifying persons of other races or ethnicities, and that witnesses may have been influenced by other information in making an identification.  The judge's fulsome instructions on identification, which carefully discussed numerous factors to consider when evaluating identification evidence, enabled jurors "to capably evaluate the accuracy" of Officer Cleary's identification and echoed similar factors in the optional instructions.  Commonwealth v. Gomes, 470 Mass. 352, 365 (2015).

> Order denying motion to suppress affirmed.
>
> Judgments affirmed.
>
> By the Court (Blake, C.J., Walsh & Hodgens, JJ.[1]),

*Paul Little*

Clerk

Entered:  November 26, 2024.

---

[1] The panelists are listed in order of seniority.