NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1382

COMMONWEALTH

vs.

BENJI B. GUERRIER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the District Court, a jury convicted the defendant, Benji Guerrier, of one count of receiving a firearm with a defaced serial number, G. L. c. 269, § 11C.  On appeal, the defendant challenges only the denial of his motion to suppress.  We accept the motion judge's findings of fact absent clear error, Commonwealth v. Evelyn, 485 Mass. 691, 696 (2020), and make an "independent determination of the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).  We discern no error requiring reversal and affirm.

On the evening of July 26, 2019, several Somerville police officers watched ten to twenty youths, including two known gang members, drinking beer around an outdoor school basketball court.  After the group moved to the school parking lot, Lieutenant Michael Capasso drove his unmarked cruiser into the lot, parked, and walked over to a parked SUV occupied by a driver with the defendant seated in the front passenger seat.  Lt. Capasso recognized the defendant from an incident eleven days earlier where he was a passenger in another vehicle in which an illegal firearm had been recovered.  Wearing a police vest with a badge displayed, Lt. Capasso casually spoke with the driver and the defendant and noticed the driver to be extremely nervous while the defendant appeared calm.  During the conversation, another officer informed Lt. Capasso that they had just located a firearm in a backpack belonging to one of the gang members in the parking lot.  Lt. Capasso asked the occupants if there were any firearms in the vehicle, and both occupants responded that they only had weed.  Becoming concerned for his safety and the safety of others after the driver repeatedly dropped his hands out of sight toward the lower portion of the seat, Lt. Capasso grabbed the driver's arm.  (Although not material to our decision, the motion judge's

2

findings reversed this sequence of questioning about firearms and grabbing the driver's arm.)

Suddenly, the defendant threw open his door, ran from the SUV, and tossed a wad of currency into the air. Lt. Capasso followed the defendant and watched him but did not initially call out to him. He noticed the defendant clutch his waistband as he ran and saw a firearm grip protruding from the defendant's clothing. Losing sight of the defendant twice, Lt. Capasso called for him to stop and radioed other officers that he was following the defendant, who was armed with a firearm. When another officer eventually apprehended the defendant, he did not have possession of a firearm. Aided by a K-9 who retraced the defendant's flight route, officers found a nine millimeter firearm.

Based on these findings by the judge, Lt. Capasso had a reasonable suspicion to conduct a threshold inquiry at the time he called out for the defendant to stop. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Mercado, 422 Mass. at 369. At that point, Lt. Capasso had heard the defendant deny the presence of a firearm and seen him abruptly jump from the SUV, toss a wad of currency in the air, flee into the night, and clutch at his waist where there appeared to be a firearm grip protruding from his clothing. These events constituted "specific and

3

articulable facts" leading to a reasonable suspicion that the defendant unlawfully carried a firearm.  Terry, supra at 21; Commonwealth v. DePeiza, 449 Mass. 367, 374 (2007) (efforts to thwart police observation "supplies the reasonable suspicion that the firearm was illegal").

We disagree with the defendant's contention that the police seized him before Lt. Capasso spotted the firearm grip.  To assess this claim, we examine the "totality of the circumstances" to determine whether a police officer has "objectively communicated that the officer would use his or her police power to coerce that person to stay."  Commonwealth v. Matta, 483 Mass. 357, 362 (2019).  Here, Lt. Capasso's mere approach to a parked SUV did not constitute a stop because a single officer "[a]pproaching in an unmarked cruiser, leaving the cruiser, and requesting to speak with a citizen, without more, does not constitute a seizure."  Commonwealth v. Rock, 429 Mass. 609, 612 (1999).  The surveillance video footage does not show police vehicles blocking the SUV as the defendant maintains.  Questioning of the occupants of the parked SUV did not constitute a seizure because "[p]olice officers are free to make noncoercive inquiries of anyone they wish."  Matta, supra at 363.  The "mere presence" of other officers interacting with teenagers in the parking lot did not constitute a seizure

4

because it was not a "discrete and intentional act" directed at the defendant.  Id. at 362.  Observing the defendant after he jumped from the SUV did not constitute a seizure.  See Commonwealth v. Watson, 430 Mass. 725, 731 (2000) ("[f]ollowing or observing" a suspect without more is not a seizure).  Finally, Lt. Capasso's grabbing the driver's arm did not constitute a seizure of the defendant because there was no coercion directed at the defendant.  See Matta, supra.  In summary, none of these actions, alone or in combination, objectively communicated that Lt. Capasso used his police power before spotting the firearm grip to coerce the defendant to stop.  Id.

Judgment affirmed.

By the Court (Hershfang, Hodgens & Smyth, JJ.[1]),

Paul Little

Clerk

Entered:  March 11, 2026.

---

[1] The panelists are listed in order of seniority.