NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-311

COMMONWEALTH

vs.

JONATHAN D. YOUNG.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Boston Municipal Court, a jury convicted the defendant, Jonathan D. Young, of several offenses, including carrying a loaded firearm without a license (G. L. c. 269, § 10 [n]) and discharging a firearm within 500 feet of a building (G. L. c. 269, § 12E).  On appeal, he claims that the motion judge erred in denying his motion to suppress, the trial judge erred in denying his motion for required findings of not guilty on these two charges, and counsel rendered ineffective assistance.  Based on the record before us, we affirm.

We discern no error by the motion judge because the facts found by the judge warranted the stop, exit order, and patfrisk. See Commonwealth v. Evelyn, 485 Mass. 691, 696 (2020) (motion

judge's findings are accepted absent clear error); Commonwealth v. Mercado, 422 Mass. 367, 369 (1996) (appellate court makes "independent determination of the correctness of the judge's application of constitutional principles to the facts as found").

Evidence at the suppression hearing showed that at about 8:30 P.M., on May 16, 2020, officers patrolling the Dorchester section of Boston heard five to ten gunshots and immediately drove toward the suspected source. In the darkness, they spotted a vehicle exit a parking lot at a high rate of speed, followed the vehicle onto an adjacent street, briefly lost sight of it, and found it a short distance away parked with its headlights off. Officers did not see any other occupied vehicles or individuals in the area. The vehicle's physical and temporal proximity to the gunshots, the high rate of speed, the absence of other people or occupied vehicles in the area, and the sudden parking with lights turned off constituted "specific and articulable facts" supporting a reasonable suspicion for a threshold inquiry. Terry v. Ohio, 392 U.S. 1, 21 (1968). See Mercado, 422 Mass. at 369; Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557 (2002) (where gunshots recently fired "there is an edge added to the calculus upon which that reasonable suspicion may be determined").

These circumstances, coupled with additional observations, justified the exit order and patfrisk.  See Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 744 (2021); Commonwealth v. Amado, 474 Mass. 147, 151-152 (2016).  Less than a minute after hearing the gunshots, the officers approached the vehicle and saw the female driver and the defendant (sitting in the front passenger seat) raising their hands.  Officers noticed a black rubber glove on the defendant's right hand.  The defendant would not make eye contact, looked straight ahead, and appeared "extremely nervous."  Such observations, particularly the gloved hand and nervous demeanor, made in the immediate aftermath of gunshots fired in the dark of night warranted an exit order based on two independent grounds -- a reasonable suspicion that the defendant was engaged in criminal activity as well as a reasonable suspicion that the defendant posed "a threat to [officer] safety."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020).  These same reasons, as well as the defendant's lack of response to two exit orders, justified the patfrisk based on a reasonable suspicion that the defendant was armed and dangerous.  Id. at 38-39.  Thus, the motion judge properly denied the defendant's motion to suppress.

We disagree with the defendant's contention that the trial judge should have allowed his motion for required findings of

3

not guilty.  He argues that because the firearm was not loaded when officers found it in his hoodie pocket, jurors had no basis to conclude that he was guilty of carrying a loaded firearm without a license and discharging a firearm within 500 feet of a building.

Viewing the evidence presented at trial in a light most favorable to the Commonwealth, "any rational trier of fact," Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979), could have concluded that the defendant fired all the ammunition seconds before hiding the firearm in his pocket given that:  within sixty seconds of hearing five or more shots fired "very close" to their location, officers found the defendant in the vehicle; the defendant, wearing a glove on his right hand, had a nine millimeter firearm in the front right pocket of his hoodie; officers found the firearm in the "lock back" position, suggesting that all the ammunition had been fired; the defendant impressed his left palm print (from the ungloved hand) on the side of the firearm's magazine; and, in the vicinity of the shooting, investigators found six nine millimeter shell casings that a ballistics expert matched to the firearm found in the defendant's pocket.  Based on this evidence, jurors could conclude that the defendant possessed a loaded firearm, knew

4

that it was loaded, and discharged it.  See <u>Commonwealth</u> v.

<u>Bonner</u>, 489 Mass. 268, 275 (2022) (inferences drawn by jury

"need only be reasonable and possible and need not be necessary

or inescapable" [citation omitted]).  Therefore, the trial judge

properly denied the motion for required findings of not guilty.

Finally, we decline to address the ineffective assistance

of counsel claim.  The defendant argues that during cross-

examination trial counsel failed to raise an objection or move

to strike a police officer's nonresponsive answer that included

a statement from the driver admitting to the shooting but also

inculpating the defendant.  At a sidebar discussion, the trial

judge noted the driver's statement was now before the jury, and

counsel did not object or move to strike.  Defense counsel

responded that he "didn't want to be caught in a situation

where, at that point in time, [he] would have the jury faced

with an objection and the like."  He concluded, "I was going to

come to sidebar.  I haven't as yet."  Counsel did not at that

point ask the judge to strike the testimony, and never returned

to the subject.  Based on this exchange, counsel clearly chose

not to raise an objection or move to strike, but he never

revealed the thought process.  In the absence of factual

findings shedding light on this thought process, we prefer not

to attribute a particular strategy to counsel in these

5

circumstances. "[T]he preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial." Commonwealth v. Zinser, 446 Mass. 807, 810 (2006). This is not a situation where the "factual basis of the claim appears indisputably on the trial record." Id. at 811. Accordingly, the defendant's claim of ineffective assistance of counsel is "best left for resolution in the first instance by the trial judge on a motion for new trial" (citation omitted). Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).

Judgments affirmed.

By the Court (Rubin, Grant & Hodgens, JJ.[1]),

Clerk

Entered: June 4, 2026.

---

[1] The panelists are listed in order of seniority.