COMMONWEALTH vs. THOMAS F. WREN.

Norfolk. January 11, 1984. — April 19, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure,* Threshold police inquiry.

The totality of the circumstances known to a police officer who arrived in his
   cruiser at a dead-end street in a quiet residential neighborhood in response
   to a telephone call from an off-duty special police officer who had
   observed a van parked across the street from his home, with its engine
   running, and then driving slowly down that street and a neighboring one
   warranted the police officer in stopping the van for a threshold inquiry.
   [707-708]

COMPLAINT received and sworn to in the Northern Norfolk
Division of the District Court Department on June 6, 1980.

On appeal to the jury session of that court, a motion to
suppress evidence was heard by *Tuttle,* J., and the case was
tried before him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Kevin G. Powers* for the defendant.

*Peter M. McElroy,* Assistant District Attorney (*Charles J.
Hely,* Assistant District Attorney, with him) for the Common-
wealth.

HENNESSEY, C.J. The defendant was convicted of posses-
sion of burglarious tools and possession of alcohol as a minor.[1]
He appealed the denial of his pretrial motion to suppress evi-
dence found in the vehicle in which he was a passenger, claim-
ing that the initial stop of the vehicle violated the Fourth
Amendment to the United States Constitution, as applicable to

---

[1] The conviction of possession of alcohol as a minor was placed on file.

the Commonwealth through the Fourteenth Amendment. The Appeals Court summarily affirmed. 15 Mass. App. Ct. 1108 (1983). We allowed the defendant's application for further appellate review. We affirm.

From the evidence adduced at the hearing on the motion to suppress, the judge could have found the following facts. Philip Droney, a full-time student and special officer of the Needham police department, lived at 28 Gauge Street, Needham. Gauge Street is a dead-end street in a quiet, residential neighborhood of single family homes. On the evening of June 5, 1980, Droney was studying at home. About 10:15 P.M., he heard an engine running for several minutes. He looked out a window and saw a white van, which he did not recognize, stopped in front of a vacant lot across the street from his home. The engine was running, the interior light was on, and two people, whom he did not recognize, were seated in the front, looking around the neighborhood. The van had no windows on the sides or back. After a few minutes, the engine was turned off and the passenger moved from his seat into the rear of the van. Droney heard the sound of the van's sliding door, which was on the side facing away from him, and then saw a figure at the rear of the van.

Droney became suspicious and went downstairs and called the police. As he was going back upstairs, he heard the engine of the van start up. He went outside and watched as the van proceeded "at a crawl" down Gauge Street and turned left onto Marshall Street, another dead-end street. Shortly thereafter, Officer Paul Kenny arrived in a police cruiser. Kenny and Droney had known each other through their work on the police force for about six years. Kenny stopped and Droney got into the cruiser. Kenny testified that Droney told him "that there was a white van parked in an isolated area. He believed that the occupants had left the van but he wasn't sure. He couldn't identify who, if anyone, had left the van. He stated that the van had left at a slow rate of speed and believed it to now be on Marshall Street." In addition, Droney told Kenny that he thought the occupants of the van were "up to something."

Kenny and Droney proceeded in the cruiser toward Marshall Street. As they approached the intersection they saw the van traveling slowly along Marshall Street toward the intersection with Gauge Street. The van increased its speed, apparently when the driver saw the cruiser. Kenny pulled the cruiser across Marshall Street; the van unsuccessfully tried to go around it. Kenny approached the stopped vehicle and requested a license and registration. These the driver was unable to produce. Kenny then asked the occupants to step out of the vehicle. When they did so, Kenny saw evidence of crime in plain view. The occupants of the van were placed under arrest.

The defendant challenges only the legality of the initial stop. A police officer may stop a vehicle in order to conduct a threshold inquiry if he has a reasonable suspicion that the occupants have committed, are committing, or are about to commit a crime. His suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. A hunch will not suffice. *United States* v. *Cortez,* 449 U.S. 411, 417-418 (1981). *Terry* v. *Ohio,* 392 U.S. 1, 21 (1968). *Commonwealth* v. *Bacon,* 381 Mass. 642, 643-644 (1980). *Commonwealth* v. *Ferrara,* 376 Mass. 502, 504 (1978). *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974).

We need not decide whether, because Droney was a special officer and was accompanying Kenny at the time of the stop, the facts known to Droney and Kenny collectively should be considered in determining whether there was ground for a reasonable suspicion. See, e.g., *Commonwealth* v. *Cruz,* 373 Mass. 676, 684-685 (1977); *Commonwealth* v. *Riggins,* 366 Mass. 81, 88 (1974). Information related by a reliable person can be sufficient to establish a reasonable suspicion. See *Commonwealth* v. *Anderson,* 366 Mass. 394 (1974); *Commonwealth* v. *Lanoue,* 356 Mass. 337, 340 (1969). Kenny knew that Droney's knowledge was based on personal observation, and he had reason to trust Droney's veracity. Cf. *Commonwealth* v. *Upton,* 390 Mass. 562, 566-569 (1983); 3 W.R. LaFave, Search and Seizure § 9.3(e) (1978). The facts communicated by Droney to Kenny, along with Kenny's knowledge of the time of night and his observations of the van's traveling

very slowly and then speeding up,[2] were sufficient to support a reasonable suspicion of criminal conduct.

Deciding whether the police had enough facts to justify a stop is often a difficult line drawing process; this is a close case. But here the police had more to go on than they had in *Brown* v. *Texas,* 443 U.S. 47 (1979), *Commonwealth* v. *Thibeau,* 384 Mass. 762 (1981), *Commonwealth* v. *Bacon, supra,* and *Commonwealth* v. *Ferrara, supra.* They could reasonably suspect that the occupants were "casing" the neighborhood or that they had dropped confederates off at the vacant lot and were passing time until a rendezvous. See *Terry* v. *Ohio, supra*; *Tillman* v. *State,* 275 Ark. 275 (1982), cert. denied, 459 U.S. 1201 (1983). On very similar facts a stop was upheld in *State* v. *Donnell,* 239 N.W.2d 575 (Iowa 1976). See also *State* v. *Halstead,*    R.I.    ,    -    (1980) (414 A.2d 1138, 1148-1149 [R.I. 1980]). The facts articulated by Officer Kenny were at least as ample as those on which we upheld a stop in *Commonwealth* v. *Almeida,* 373 Mass. 266 (1977). See also *Commonwealth* v. *Moynihan,* 376 Mass. 468, 470-471 (1978); *Commonwealth* v. *Lehan,* 347 Mass. 197 (1964).

Because Officer Kenny had enough specific, articulable facts to warrant a reasonable suspicion of criminal conduct, his stop of the van in which the defendant was a passenger was not unreasonable and did not violate the Fourth and Fourteenth Amendments. The motion to suppress was properly denied.

*Judgment affirmed.*

---

[2] An attempt to avoid contact with or observation by the police, while not enough in itself to justify a suspicion, may be considered along with other facts; an attempt to elude the police once pursuit begins may not be considered. See *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981); *Commonwealth* v. *Bacon,* 381 Mass. 642 (1980). Clearly, the "stop" occurred here when Kenny placed the police cruiser across Marshall Street, and nothing that occurred thereafter can be used to justify the stop.