Fecteau, J.
The defendant has been indicted for possession of a controlled substance with intent to distribute. He has filed a motion to suppress evidence obtained by police as a result of a warrantless seizure, contending that the intervention by police was without adequate basis and otherwise unlawful. The Commonwealth disagrees.
An evidentiaiy hearing was conducted on January 24, 2005, and testimony was received from an officer of the Gardner Police Department and the defendant. At the request of counsel for the defendant, additional time was granted in order to file a supporting memorandum, with leave to both parties to file such mem-oranda by February 14, 2005. Thereafter, the matter was taken under advisement.[1]
According to testimony of Detective Rocco Siciliano of the Gardner Police Department, on October 8,2003, at approximately 9:30 p.m., by prior arrangement, he met with a confidential informant whose name was known to him. This informant, according to Siciliano, arranged, in his presence, to purchase heroin from a Hispanic male, operating a black motor vehicle, with the meeting set to take place in about 30 minutes at the Fitchburg K-Mart Shopping Plaza, near the Radio Shack store. According to the officer, he told the informant to tell the seller to expect the buyer to be driving a gold Honda Civic, with tinted windows, which Siciliano intended to be driving. The informant provided neither a name of the seller nor a registration number for the car in which he’d be arriving. As no identification or better description of the seller was provided to Siciliano by the informant, he did not know whom to expect.
Surveillance of this shopping center parking lot was then arranged with 4 or 5 other members of the drug task force operating in the north Worcester County area. According to Siciliano, at the appointed time, while operating a gold Honda, he pulled up near a black car and stopped, parallel to it about ten feet away. Upon doing so, he says that the defendant got out of the black car, and as he did so, he reached inside the groin area of his pants and came out with what appeared to Siciliano to be a plastic sandwich baggy that he clenched in his right hand. He (Siciliano) then got out of his car and although no words were exchanged, they made eye contact with each other, whereupon the defendant then began to run away. The officer, in radio contact with other officers and reporting this turn of events, gave chase. About 50 feet away from their original position, and about 10 feet away from the defendant, Siciliano saw him toss the baggy and keep running. While Siciliano attended to the baggy, he saw the defendant being chased down and apprehended by another officer after running an additional 50 feet or so. Upon retrieval of the baggy, Siciliano recognized what appeared to him to be packets of heroin within the discarded baggy and he radioed this to the other officers. Upon arresting the defendant and searching him, nothing else of note was discovered.
The defendant admitted in testimony that he did drive to the scene in a black car, not to make a drug deal but to go to a DeAngelo’s Sandwich Shop. He asserted that he was not confronted by Detective Siciliano or a gold Honda but rather a civilian named Billy who called out his name while he was standing near a Payless Shoe Store. He also noticed near where Billy was standing a green car parked nearby, which he recognized as Billy’s, in which was seated a person whom he identified at the hearing as Detective Sicili-ano. He denied that he ever reached into his pants or was holding anything in his hands. He then said he saw that a Kia motor vehicle was approaching the point where he and Billy were standing, about 4 feet away from each other. As this car came near, at a high speed, Billy told him to run. He began to be scared when he saw someone getting out of this car, and as he saw another vehicle believed to be a “GMC” coming at him. He began to run and, as he was doing so, believing that someone was seeking to grab him for what he had in his possession, namely, a small bag of heroin, and he threw it. He was not certain who was chasing him. He did not see Detective Siciliano get out of the vehicle until after he had been apprehended and he had no conversation with him.
The late disclosed police report (see fn. 1, supra), authored by another police officer who was part of this surveillance team, indicates details that are more consistent with the testimony of the defendant than of Siciliano. For example, the report states that the defendant pulled up in his car next to another car, following which the defendant got out and approached another person standing near the Radio Shack, who is unidentified in the report. I infer that this other person was not Officer Siciliano. The reporting officer *176 then states that after the order is given to converge, the two men are then seen to start to run, again contrary to Siciliano’s version.[2] I do not credit the testimony of Det. Siciliano, disbelieving that he pulled up alongside the defendant who, as he got out of his car, reached into his groin area of his pants and pulled out a clear plastic bag containing what Det. Siciliano observed and believed to be baggies of heroin. This inconsistency also leads me to seriously question the credibility of the officer’s testimony that concerned his interaction with the informant and the information received therefrom.
This case presents two basic issues: whether, from the point in time that the defendant began to run, but before discarding the bag of heroin, police had seized him, and if so, whether sufficient cause was present to conduct an investigatory stop, restrain his liberty or arrest him for a violation of the narcotics laws. If the police had insufficient cause to pursue, i.e., detain him, his discard of the narcotics and police seizure of it is not considered a voluntary abandonment of the item and must be suppressed as a fruit of an illegal pursuit.
Whether pursuit of suspects amounts to a seizure in a constitutional sense has been the subject of a number of recent cases, and it now appears relatively settled that the initiation of pursuit by police requires a reasonable basis, founded upon articulable facts and circumstances causing a reasonable belief that criminal activity is afoot. Commonwealth v. Stoute, 422 Mass. 782, 789-90 (1996). “It is true that law enforcement personnel must have reasonable suspicion for pursuit to begin . . . But ‘pursuit begins only when action by police would ‘communicate’ to the reasonable person an attempt to capture or otherwise intrude on [an individual’s] freedom of movement.’ ... It occurs when police attempt to stop an individual ‘to effectuate a threshold inquiry .. . Following or observing someone without more, such as using a siren or lights, attempting to block or control an individual’s path, direction, or speed, or commanding the individual to halt, is not pursuit.’ ” ([Internal quotations from Commonwealth v. Williams, 422 Mass. 111, 116-17 (1996);] Commonwealth v. Grandison, 433 Mass. 135, 138 (2001).)
I credit the defendant’s testimony, buttressed by the report of Officer Deming, that he did not begin to run until an order was given to the surveillance team to converge and when the defendant noticed that at least two vehicles were coming at him at high speed. This was police conduct of an aggressive and intimidating nature. Consequently, the defendant’s flight was prompted by, and did not precede, a show of force by police, suddenly arriving from several directions, in several vehicles, and even though the defendant was not then certain that it was police officers who were converging on him, it was apparent to him, as it would have been apparent to any reasonable person, that there was activity occurring which was going to seriously intrude on his freedom of movement. It appeared to the defendant that he was the subject of their interest, that avenues of escape were being blocked off and that he was not going to be free to leave. He was, therefore, seized, upon the commencement of actions by police converging on him “requiring reasonable suspicion under Art. 14 [of the Constitution of the Commonwealth, Declaration of Rights].” Commonwealth v. Dasilva, 56 Mass.App.Ct. 220, 225 (2002), citing Commonwealth v. Thibeau, 384 Mass. 762, 763-64 (1981), Commonwealth v. Barros, 435 Mass. 171, 174-76 (2001), and others.
Consequently, the analysis turns on whether the police, at the moment of seizure, i.e., the commencement of the pursuit, had reasonable suspicion to believe that the defendant was committing an offense. I discredit Det. Siciliano’s testimony that he saw the defendant reach into the groin area of his pants and withdraw a bag containing what appeared to him to be heroin packets. Therefore, the only other evidence that remains in connection with conduct of the defendant suggested as suspicious of criminal activity is either the police report of Officer Deming, or the information reportedly received by Det. Siciliano from the informant, if believed.
The extent of information from Officer Deming is that, after receiving information that a drug deal was about to transpire involving a Hispanic male arriving in a black car who was going to deliver heroin to another person, and once the surveillance team was in place at the K-Mart Plaza, he saw the defendant walk towards another Spanish male, and at that time the order was given to police to converge on the two individuals, at which time the two began to run and police gave chase. This information does not provide a sufficient basis to support police intervention under these circumstances.
Even if credible, the information Det. Siciliano says he obtained from the informant was essentially that a drug buy had been set up with a Hispanic male, without further description, who was going to be arriving at the K-Mart Plaza parking lot within thirty minutes in a black car, again without further description. In evaluating the propriety of a Terry stop, inquiry must be made whether the initiation of the stop was proper in the circumstances and whether the scope was justified by the circumstances. ‘To meet the ‘reasonable suspicion’ standard,” to which Massachusetts adheres, “police action must be ‘based on specific, articulable facts and reasonable inferences therefrom’ rather than on a ‘hunch.’ ” Commonwealth v. Lyons, 409 Mass. 16,19 (1990). If the police conduct an investigatory stop based on an informant’s tip, our evaluation of the tip’s indicia of reliability will be focused on the informant’s reliability and his or her basis of knowledge Id., citing Commonwealth v. Wren, 391 Mass. 705, 707 (1984). Independent police cor *177 roboration may make up for deficiencies in one or both of these factors. Id. Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible. Id. When the information in the case at bar is evaluated according to the Aguiar-Spinelli test, it being understood that this informant did not have any histoiy of past successful assistance to police, thus requiring a higher degree of detail to support the reliability of the information, what was provided falls far below the level of detail required for corroboration of predicted behavior found in the line of cases that follows Draper v. United States, 458 U.S. 307 (1959), and Commonwealth v. Brown, 31 Mass.App.Ct. 574 (1991), and is more consistent with Commonwealth v. Lyons, supra While the facts herein are somewhat similar to those in the case of Commonwealth v. Hall 50 Mass.App.Ct. 208 (2000), upon closer comparison, the Commonwealth’s position here is not enhanced: the informant in Hall was of proven reliability from prior occasions and provided more detailed information over the course of a period of time and the officer knew the identity of the target defendant. For these reasons, I do not credit this information as being sufficiently detailed to satisfy the Commonwealth’s burden to show that its suspicion was reasonably founded; moreover, Det. Siciliano’s credibility has been seriously undermined. Therefore, the only other evidence upon which reasonable suspicion can be based is from the defendant himself, whom we know was carrying a packet of heroin, but who also states that he was present only to buy a sandwich at the DeAngelo’s sandwich shop and that he had not carried the bag of heroin in his hand nor retrieved it at any time prior to running. Other than his arrival at this location in a black car, his testimony does not lead to a reasonable suspicion of criminal conduct prior to his flight.
Upon consideration of the credible evidence, there is none supportive of the Commonwealth’s claim that the pursuit of the defendant was adequately supported. Consequently, the defendant’s motion must be allowed.

ORDER ON MOTION

For the foregoing reasons, the defendant’s motion to suppress evidence is allowed.

On Februaiy 9, 2005, in addition to a memorandum filed in support of his motion, the defendant filed a motion to expand the motion record to include a late-disclosed police report provided to him by the Commonwealth’s attorney, to his credit, following the suppression hearing. The Commonwealth having no objection to the motion, it was allowed on February 28, 2005.

While it is not evidence in the case, and likely not a judicial admission that should bind the commonwealth, I nonetheless find it noteworthy that the “Statement of the Facts” which the Commonwealth reported in its Memorandum in Opposition to the Defendant’s Motion to Suppress Evidence, on page 1 thereof, that “[sjurveillance officers observed the defendant get out of his black car and walk over to another Spanish male near the Radio Shack in the K-Mart Plaza. The defendant spoke to the man and then reached into his pocket and pulled a baggie out of his pocket. Believing they were witnessing a drug transaction, the police moved in and both parties ran from the scene.” This version, like that in the late disclosed police report, but concededly filed well prior to the motion hearing, is significantly inconsistent with the testimony of Det. Siciliano.