## COMMONWEALTH *vs.* WILLIAM BOSTOCK.

Norfolk. January 7, 2008. - February 11, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Reasonable suspicion, Automobile. *Constitutional Law,* Investigatory stop.

Although a Superior Court judge correctly found that police ·officers had reasonable suspicion to conduct a threshold inquiry of the criminal defendant, who was the only person in the area of two recent break-ins matching witness descriptions of the perpetrator, the judge nevertheless erred in finding that the officers violated the defendant's constitutional rights in ordering him to leave his vehicle, where the officers, who had a reasonable suspicion of criminal activity, were not required to have a reasonable belief that their safety was at risk before issuing the exit order, and where the order was proportional to the suspicion that prompted the intrusion and served as a measure to prevent the defendant's escape and protect the safety of the officers from a fleeing vehicle or high-speed pursuit. [619-623]

A Superior Court judge erred in allowing the criminal defendant's motion to suppress evidence of items reported stolen that police officers found when conducting a warrantless search of the truck in which they found the defendant, where the search was justified under the automobile exception to the constitutional requirements for a search warrant, in that probable cause existed to believe that the truck contained evidence of a crime. [623-625]

INDICTMENTS found and returned in the Superior Court Department on November 6, 2003.

A pretrial motion to suppress evidence was heard by *Isaac Borenstein,* J.

Leave to prosecute an interlocutory appeal was allowed by *Cowin,* J., in the Supreme Judicial Court for the county of Suffolk. The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

*Paul C. Brennan* for the defendant.

*Andrew S. Crouch,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

SPINA, J. The Commonwealth sought interlocutory review of the order of a judge in the Superior Court suppressing evidence obtained after police ordered the defendant, William Bostock, out of a vehicle and searched his bags. The judge concluded that the police lacked authority to issue the exit order and search Bostock's bags. A single justice allowed the interlocutory appeal, and we transferred the case here on our own motion. We reverse the allowance of the motion to suppress.

*Background.* On September 22, 2003, at approximately 10 P.M., Officer Donald Allison of the Quincy police department received a dispatch that someone had broken into a vehicle located at 45 Bracket Street in Quincy. Within one minute of the dispatch, Allison arrived at the scene and spoke with William Mello, a security guard who had reported the break-in. In a conversation that lasted approximately one minute,[1] Mello told Allison that the suspect was male, was wearing a light-colored shirt and blue jeans, and was carrying a duffel bag. Mello told Allison that he had seen the suspect rummaging through a car belonging to a friend and that, when Mello called out, the suspect had stepped out of the vehicle and headed toward 99 Bracket Street.

Allison drove toward 99 Bracket Street and arrived within fifteen seconds. As Allison entered the parking lot at 99 Bracket Street, Richard Richu hailed him. Richu informed Allison that he had seen a white male wearing a light-colored shirt and jeans walking away from Richu's van in the parking lot. Richu said that he had examined his vehicle and found several items to be missing, including a compact disc player, a radar detector, and a Nextel cellular telephone. Richu said that the suspect had walked in the direction of a wooden fence that separated the parking lot from an adjacent parking lot.

Allison radioed for backup, and several officers responded to help search for the suspect. Shortly thereafter, Officer Thomas Gaeta radioed that he had found a person (Bostock) who

---

[1] The judge did not find that the conversation lasted for approximately one minute. We, however, may supplement the judge's subsidiary findings with uncontested testimony presented at the hearing by a witness whose testimony largely was credited by the judge and does not contradict the judge's findings. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007), and cases cited.

matched the suspect's description in a parked pickup truck[2] in the adjacent parking lot beyond the wooden fence. Within approximately fifteen seconds of Gaeta's report, Allison arrived at Bostock's location. There was no evidence that Bostock was armed or dangerous.

On Allison's arrival, Gaeta ordered Bostock out of the truck. He complied. Allison then asked Bostock what his name was and what he was doing in the area. He replied by giving his name and by explaining that he had been too late to get a bed at Father Bill's.[3] He told Allison that he had just entered the truck. As Bostock answered, Allison looked inside the truck and saw a Nextel cellular telephone and three bags. At least one of the bags was a duffel bag.

Allison asked Bostock, "Are those your bags?" Bostock answered that they were not. Allison then reached into the vehicle and removed the bags. At that point, the mouth of one bag gaped open, and Allison saw a compact disc player inside.

Thereafter, Allison asked other police officers to bring Mello and Richu to Bostock. After his arrival, Mello made a positive identification of Bostock. The police formally placed Bostock under arrest. Richu arrived and also identified Bostock.

At the evidentiary hearing, Bostock moved to suppress the statements made and physical evidence obtained after the warrantless search and seizure. The judge determined that there was no probable cause to suspect that the truck contained fruits or instrumentalities of a crime and that the "automobile exception" to the warrant requirement therefore did not apply. The judge concluded that there was reasonable suspicion to believe that Bostock had committed, was committing, or was about to commit a crime but found that Gaeta's exit order violated art. 14 of the Massachusetts Declaration of Rights because the police did not have a reasonable belief that they were in danger. The judge suppressed the evidence obtained from the truck after the warrantless search and seizure.

---

[2]The judge found that the officers could not have inferred reasonably at the time of their search and seizure that the truck did not belong to Bostock, but the officers later learned that the truck was unregistered.

[3]It is not clear from the record, but it appears that the judge recognized Father Bill's to be a local homeless shelter.

*Discussion.* "We accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996).

The parties dispute whether the judge was correct to find that the police had reasonable suspicion to believe that Bostock had committed, was committing, or was about to commit a crime when Bostock was ordered out of the truck.

Where a police officer has a reasonable, articulable suspicion that a person has committed, is committing, or is about to commit a crime, the officer may stop that person to conduct a threshold inquiry. *Terry* v. *Ohio,* 392 U.S. 1, 21-22 (1968). *Commonwealth* v. *Thibeau,* 384 Mass. 762, 763 (1981). *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). A mere hunch does not amount to reasonable suspicion. *Commonwealth* v. *Wren,* 391 Mass. 705, 707 (1984). When Bostock was ordered out of the truck, the police had more than a mere hunch. They had found Bostock within minutes of two break-ins and in the general vicinity of the alleged crimes. Bostock matched the descriptions that two witnesses had provided independently to the police, and the police, having canvassed the area, had found no one else matching those descriptions. In light of these specific, articulable facts, the judge was correct to find that the police had reasonable suspicion to conduct a threshold inquiry.

The parties dispute, in addition, whether our holding in *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 662-663 (1999) (*Gonsalves*), applies to this case. More specifically, the Commonwealth argues that the judge erred in finding that, to issue an exit order, police are required to have a reasonable belief that their safety is at risk. Bostock, on the other hand, argues that the judge did not err and that such a reasonable belief is required before a person may be ordered out of a car.

In *Gonsalves, supra,* we held that art. 14 requires that, before ordering a driver out of a car, a police officer must have a reasonable belief that the officer's safety or the safety of others is in danger. The holding in that case was expressly limited to

routine traffic stops. *Id.* (art. 14 "requires that a police officer, *in a routine traffic stop*, must have a reasonable belief that the officer's safety, or the safety of others, is in danger before ordering a driver out of a motor vehicle" [emphasis added]). See *id.* at 666 n.5 ("To the extent that a bright-line rule is needed, our conclusions today establish one: No exit order may be given to the driver or any passenger *in a routine traffic stop* without the police officer's having an objective reasonable basis to justify the order" [emphasis added]); *id.* at 668 ("we conclude that, under art. 14, the balancing of interests requires that Massachusetts citizens should not be subjected to unjustified exit orders *during routine traffic stops*" [emphasis added]).

Later opinions have adhered to *Gonsalves*'s limitation to cases involving routine traffic stops. See *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001) ("When the police are justified in stopping an automobile *for a routine traffic violation*, they may . . . order the driver or the passengers to leave the automobile, but only if they have a reasonable belief that their safety, or the safety of others, is in danger" [emphasis added]); *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. 683, 685 (2001) ("*in a routine motor vehicle stop*, the police may not . . . order a driver or passenger from a lawfully stopped vehicle without reasonable apprehension of danger to an officer or others" [emphasis added]); *Commonwealth* v. *Robie*, 51 Mass. App. Ct. 494, 498 (2001) ("where there is a *routine traffic stop*, the Commonwealth must show that a police officer had a reasonable belief that the officer's safety, or the safety of others, was in danger before ordering a driver or passengers out of a vehicle" [emphasis added]). See also *Commonwealth* v. *Washington*, 449 Mass. 476, 482 (2007) (analyzing "exit order and patfrisk as part of a routine traffic stop").

The underlying policies of *Gonsalves* urge us not to extend its holding to a case where the police have reasonable suspicion of criminal activity. *Gonsalves* bases its holding in part on reasonable expectations. More specifically, motorists have a reasonable expectation that the police will conduct a routine traffic stop quickly and with minimal intrusion. *Gonsalves, supra* at 663. See *id.* at 669-671 (Ireland, J., concurring). This reasonable expecta-

tion, however, exists only "in the absence of justification" for the police to act in a more intrusive manner. *Id.* at 663. A reasonable suspicion of criminal activity is justification to act in a more intrusive manner. See *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997) (in routine traffic stop, further intrusions unjustified unless police have grounds to infer criminal activity). See also *Commonwealth* v. *Feyenord*, 445 Mass. 72, 78 n.5 (2005) (officer may not prolong or expand uneventful threshold inquiry). That is, when the police reasonably believe that a motorist has committed a crime, a motorist reasonably should expect that the police may engage in greater intrusions than when the motorist is suspected merely of a driving infraction. See *Commonwealth* v. *Moses*, 408 Mass. 136, 141-142 (1990) (officer's intrusions must be proportional to suspicion that prompted intrusion).

*Gonsalves* also bases its holding on concerns about racial profiling in routine traffic stops. The requirement that the police have a reasonable belief of danger helps to prevent random, arbitrary, and unequal treatment of motorists. *Gonsalves, supra* at 663-664. See *id.* at 669-671 (Ireland, J., concurring). The requirement hinders discriminatory treatment because the police must have not just a hunch but "specific and articulable" concerns for their safety to justify an exit order. *Id.* at 664. Similarly, in order to effectuate a *Terry* stop, police officers are required to have not just a hunch but "specific and articulable facts" to support a reasonable suspicion of criminality. *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763 (1981), quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). See *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984), and cases cited. The requirement of having a reasonable suspicion of criminality provides much the same protection against discrimination in *Terry* stops as the *Gonsalves* requirements do in routine traffic stops. As far as discrimination is concerned, where there exists reasonable suspicion of criminality, there is no need for the additional protections of *Gonsalves.* Because the police acted on reasonable suspicion of criminality, the judge erred in applying our holding in *Gonsalves* to the present case.

Even if the *Gonsalves* holding does not apply, Bostock argues that the police conducted an unconstitutional seizure when they ordered him out of the vehicle. He contends that the exit order

was disproportionate to the level of suspicion that prompted it. The Commonwealth argues, on the other hand, that the response was proportionate and that the exit order was therefore constitutional.

*Terry* v. *Ohio*, 392 U.S. 1 (1968), and its progeny recognize that a police officer may in certain circumstances stop a person on less than probable cause. To be constitutional, an officer's intrusions during such a stop must be "proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Moses, supra* at 141, quoting *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). Because there is no bright-line rule to determine proportionality, "we must balance the need to make the stop and conduct the search against the intrusion on the defendant." *Commonwealth* v. *Torres*, 433 Mass. 669, 672 (2001).

In the present case, the exit order was proportional to the suspicion that prompted the intrusion. The police had reasonable suspicion to believe that Bostock, when they found him, had recently engaged in criminal activity, namely, breaking into cars and stealing property. The officers were permitted to take reasonable measures, such as ordering him out of the vehicle in which he was sitting, to ensure that he did not attempt to escape before they could conduct a threshold inquiry. See *Commonwealth* v. *Moses, supra* at 142 (officer ordered driver to turn off ignition and hand over car keys to prevent flight); *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 304-306, 307-309 (1986) (officer blocked suspect's vehicle and approached suspect with gun drawn to prevent escape).

The exit order in this case was also a reasonable measure to prevent the harm that might have occurred as part of an attempt by Bostock to escape by car. A suspect need not necessarily possess a weapon to pose a danger to police officers or to others, especially where that suspect is in an automobile and is reasonably suspected of criminal activity. See *Commonwealth* v. *Feyenord, supra* at 76 ("the exit order was not predicated on suspicious movements or the visible presence of a weapon or possible contraband"); *Commonwealth* v. *Stampley*, 437 Mass. 323, 326 (2002) ("the Commonwealth is not required to make the specific showing that a driver or passenger has a weapon" or

point to specific facts that occupants were "armed and danger-ous" for exit order to be proper); *Commonwealth* v. *Moses, supra* at 143, quoting *Commonwealth* v. *Blake,* 23 Mass. App. Ct. 456, 460 (1987) ("We think the police could act on a prob-ability that the occupants of the car, conscious of guilt and fear-ing imminent exposure, would, unless blocked [or otherwise temporarily immobilized], attempt flight, with danger to the public, the police racing in pursuit, and the occupants them-selves"); *Commonwealth* v. *Farmer,* 12 Mass. App. Ct. 961, 962 (1981) ("it was . . . reasonable to question [the suspects] outside their car, where they would not have access to weapons or means of escape").[4] To prevent the escape of the suspect and to protect the safety of the officers from a fleeing vehicle or high-speed pursuit, the exit order in this case was proportional to the suspicion that prompted the order. The judge erred in finding that the exit order violated Bostock's constitutional rights.

The Commonwealth argues, in addition, that the judge erred in suppressing the evidence that the police found as a result of their warrantless search within the truck. In particular, the Com-monwealth argues that the police lawfully searched the truck and the bags within it under the "automobile exception" to the constitutional requirements for a search warrant. Bostock, how-ever, argues that the judge was correct in suppressing the evi-dence where the officers saw nothing "manifestly criminal" in the truck that might justify their warrantless search.[5]

"It is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magi-

---

[4]The police reasonably suspected Bostock of criminal activity, but, as stated above, see note 2, *supra,* when Bostock was ordered out of the truck, the of-ficers could not reasonably have inferred that Bostock was not lawfully in possession of the truck.

[5]The Commonwealth has not challenged Bostock's standing to contest the police officer's search and seizure. "When a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and the seizure of that evidence." *Commonwealth* v. *Amendola,* 406 Mass. 592, 601 (1990). In the present case, Bostock is charged with crimes in which possession or receipt of seized evidence is an essential element of guilt. See G. L. c. 266, § 49 (possession of burglarious instruments); G. L. c. 266, § 60 (receiving stolen property). Bos-tock has standing.

strate, are per se unreasonable [under both the Fourth Amendment to the United States Constitution and art. 14] — subject only to a few specifically established and well-delineated exceptions.' " *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990), quoting *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989). One of those exceptions, commonly known as "the automobile exception," applies to situations where the police have probable cause to believe that a motor vehicle parked in a public place and apparently capable of being moved contains contraband or evidence of a crime. See *Commonwealth* v. *Gajka*, 425 Mass. 751, 752 (1997); *Commonwealth* v. *Cast, supra.* "The existence of probable cause depends on whether the facts and circumstances within the officer's knowledge at the time of making the search or seizure were sufficient to warrant a prudent man in believing that the defendant had committed, or was committing, an offense." *Commonwealth* v. *Miller*, 366 Mass. 387, 391 (1974). As a general matter, under the automobile exception, the "lawful warrantless search of a motor vehicle . . . extends to all containers, open or closed, found within." *Commonwealth* v. *Cast, supra* at 908.

In the present case, Officer Allison lawfully could have searched the truck and its contents under the automobile exception because there was probable cause to believe that the truck contained evidence of a crime. The following facts established probable cause. The police found Bostock within minutes of the crimes and in the general vicinity where the crimes occurred. Bostock was where the police would have expected the thief to be; witnesses had said that the suspect had gone in the direction where the police had found Bostock. Bostock matched the descriptions of the suspect provided independently by two witnesses. The police, after canvassing the area, found no one else matching the witnesses' description of the suspect. Allison was told that the suspect had stolen a Nextel cellular telephone and was carrying a duffel bag, and he saw a Nextel cellular telephone and a duffel bag in the truck.[6] Because the thefts occurred just minutes before Allison found Bostock, he would

---

[6]The judge concluded that Allison could not establish probable cause through discovery of the duffel bag because he only saw the duffel bag as a result of his unlawful exit order. Because we conclude that the exit order was lawful,

have just entered the truck if he were the thief, and Bostock told Allison that he had just entered the truck. Bostock denied that the bags in the truck were his. See *Commonwealth* v. *Watson*, 430 Mass. 725, 734 (2000), quoting *Commonwealth* v. *Riggins*, 366 Mass. 81, 88 (1974) (where defendants denied ownership of suitcases in their car, court concluded that "[i]mplausible answers to police questions will, with other facts, support a finding of probable cause to conduct a search . . ."). These facts, taken together, establish probable cause. *Commonwealth* v. *Miller, supra.* Although later facts may have provided additional evidence against Bostock, that does not mean that Allison lacked probable cause at the time of his search. Allison lawfully searched the vehicle and the containers within it under the automobile exception to the warrant requirement. The judge's conclusion to the contrary was erroneous.

We reverse the allowance of the defendant's motion to suppress and remand this case to the Superior Court for further proceedings.

*So ordered.*

Allison's discovery of the duffel bag may be used to establish probable cause.