NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-396

COMMONWEALTH

vs.

JAYDON A. PRATHER-WALKER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from the allowance of the defendant's motion to suppress, contending that police had reasonable suspicion to stop and pat frisk the defendant.  We affirm.

Facts.  The following facts are drawn from the motion judge's findings, none of which the Commonwealth challenges on appeal.  On March 31, 2022, Sergeant Joao DePina of the Boston police department was assigned to the youth violence strike force.[1]  He was with his partner in an unmarked Ford Explorer, although it was "easily identifiable as a police car."  The

---

[1] At the time, DePina was a patrol officer.  He has since been promoted.

officers were wearing ballistic vests with "Boston Police" printed in bold lettering, duty belts with weapons, and other police equipment, but they were not in police uniforms.  DePina and his partner were patrolling Nubian Square in Roxbury, an area of "high criminal activity, particularly shootings and other serious crimes."

While driving past the Nubian Square Massachusetts Bay Transportation Authority (MBTA) station at approximately 10:10 P.M., the officers saw, among other MBTA riders, two people standing on the well-lit platform.  Both people were wearing masks that covered their faces.  When they noticed the Ford Explorer, the two people "stood taller and began to look about them."  As an MBTA bus pulled into the platform, one of the two persons walked toward the bus with a phone in his hand.  He was wearing a hooded sweatshirt with something "heavy" weighing down the front pockets.  The other person, later identified as the defendant, started to walk away as the officers drove in the same direction.  The defendant walked at a normal pace at first, but then "picked-up" his pace and began walking faster.  DePina noticed that the defendant's jacket "appeared to be weighted" on the right side.  He had a phone in his hand.

Additional police officers arrived, and one cruiser drove around the block to approach the defendant from the opposite direction.  The defendant then began to run "at a full sprint."

2

Officers grabbed the defendant, and one felt the outline of a firearm through the defendant's right pocket. A firearm was recovered, and the defendant, who was nineteen years of age and too young to lawfully carry a firearm, was arrested. The motion judge reviewed body-worn camera footage of the arrest, as did we.[2]

Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the judge's] ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

Here, the Commonwealth claims that the motion judge erred in ruling that, at the time of the stop, the police lacked

_____

[2] We review the body-worn camera footage de novo. See Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018).

3

reasonable suspicion that the defendant was carrying an illegal firearm. "To meet the 'reasonable suspicion' standard in this Commonwealth, police action must be 'based on specific, articulable facts and reasonable inferences therefrom' rather than on a 'hunch.'" Commonwealth v. Lyons, 409 Mass. 16, 19 (1990), quoting Commonwealth v. Wren, 391 Mass. 705, 707 (1984). While the police here handled the situation understandably, they did not have reasonable suspicion that the defendant was carrying an illegal firearm. As the motion judge noted in his thoughtful and detailed findings and conclusions of law, the factors at issue here, taken individually and in their totality, present a close case. At most the police saw two individuals wearing hooded sweatshirts and balaclavas that covered their faces in a high crime neighborhood. After observing police, the individuals altered their body language; one then left on a bus. The defendant, who the police noted had a "weighted" pocket, walked away and then increased his pace as police approached. As the motion judge observed, this constellation of facts might be sufficient for purposes of the Fourth Amendment, see Illinois v. Wardlow, 528 U.S. 119, 124-126 (2000), but it does not constitute reasonable suspicion under the Massachusetts Declaration of Rights. See Commonwealth v. Warren, 475 Mass. 530, 535-540 (2016). Contrast Commonwealth v. Karen K., 491 Mass. 165, 175-182 (2023) (combination of factors including

4

behavior consistent with concealing firearm, repeated evasion of police, and concerned caller tip gave rise to reasonable suspicion).

Order allowing motion to
  suppress affirmed.

By the Court (Blake, C.J.,
  Neyman & Grant, JJ.[3]),

_Paul Little_

Clerk

Entered:  December 12, 2024.

---

[3] The panelists are listed in order of seniority.